1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

FOR THE EASTERN DISTRICT OF CALIFORNIA

10
11

JAMES E. CARROLL,                                          No.  2:12-cv-2736 TLN GGH P

12
                                    Petitioner,              ORDER; and

13
                 v.                                        FINDINGS AND RECOMMENDATIONS

14
DIAZ Warden,

15
                                    Respondent.

16
17

18      _Introduction and Summary_

19              Petitioner, James Carroll was first charged with the crimes at issue on September 9, 2009.

20      Just before trial started, the charges were superseded in an information dated February 3, 2010.

21      On February 11, 2010, petitioner was convicted of first degree residential burglary (Cal. Penal

22      Code § 459), assault with a deadly weapon (Cal. Penal Code § 245 (a)(1)), and personal use of a

23      knife in the commission of a burglary (Cal. Penal Code § 12022(b)).  Petitioner was also found to

24      have incurred two prior "strikes" as well as prior serious felony convictions (Cal. Penal Code

25      §§1170.12, 667(a)).  Petitioner received an indeterminate sentence of 25 years to life for the

26      residential burglary (three strikes sentence), a one year enhancement for use of a knife, and an

27      /////

28
                                                           1

1   additional five years for each of the prior serious, felony convictions—total of 36 years to life

2   imprisonment.[1]

3        On appeal, petitioner only attacked aspects of his sentence: his 1978 federal conviction for

4   bank robbery should not have counted as a strike; failure to "strike a strike" so that he would not

5   be eligible for three strikes was error.  The petition for review in the California Supreme Court on

6   these issues was denied on July 27, 2011.

7        Petitioner then turned to the Superior Court on January 19, 2012 with a petition for habeas

8   corpus with a broadened attack on his conviction.[2]  He claimed ineffective assistance of counsel

9   in several respects, primarily an alleged failure of his counsel to investigate exonerating

10  witnesses, and attorney conflict of interest.  He also attacked his sentence on *ex post facto* and

11  double jeopardy grounds.  This petition was denied in a reasoned decision on procedural and

12  substantive grounds.

13       The Superior Court decided on February 6, 2012 that "[f]irst and foremost, petitioner

14  failed to raise these issues in his appeal" citing to In re Drew, 188 Cal. 717 (1922).  The Superior

15  Court then went on to decide the issues on their merits.[3]  With respect to the ineffective assistance

16  of counsel issues and the alleged conflict of interest, the Superior Court found that petitioner's

17  presentation was entirely conclusory, i.e., no evidentiary submittal was made with respect to the

18  exonerating witnesses, and evidence regarding the conflict of interest was lacking.  With respect

19  to the sentencing issues, the court found that no law required that petitioner be advised of the

20  future use of [past] convictions when those convictions were incurred.  Moreover, the use of prior

21  convictions to enhance a present sentence was not a violation of double jeopardy or *ex post facto*

22  protections in the Constitution.

---

[1] Petitioner also received a suspended 35 years to life sentence on the assault with a deadly
weapon conviction.
[2] The record supplied by respondent is confusing in that petitioner had also filed a writ of habeas
corpus on January 2, 2009, a date which preceded the filing of charges in this case.  That petition
was denied on March 2, 2009, and has no bearing on the issues in this case.
[3] The segue in the Superior Court opinion is unclear in that after the denial on procedural
grounds, the opinion continued: "Petitioner *next complains* [of the very issues which the court had
just denied on procedural grounds]" (emphasis added).  However, it appears to the undersigned
that the segue was simply an awkward way to reach the merits in the alternative.

1    The follow-up petitions to the appellate court and state supreme court were denied without

2    comment.  Therefore, the higher courts are presumed to have adopted the last explained decision,

3    in this case, of the Superior Court.  Plascencia v. Alameda, 467 F.3d 1190, 1198 (9th Cir. 2006).

4    On November 1, 2012, the federal petition was filed in the Eastern District of California.

5    An answer and traverse were filed as well as an opposed request for an evidentiary hearing.  For

6    the reasons set forth below, the request for evidentiary hearing is denied, and the petition should

7    be denied in its entirety.

8    *Underlying Facts*

9    Because only sentencing issues were raised before the appellate court on direct review, the

10   statement of facts was much truncated.

11
12   Defendant began beating on the door of an acquaintance's apartment one afternoon and
     yelling he was going to kill the man. When the acquaintance refused to open the door,
13   defendant broke the apartment's front window, jumped through it, and started trying to
     stab the man while the victim put up his hands and tried to defend himself.
14   Officers followed a blood trail and ultimately located defendant running away from law
     enforcement officers.
15

16   People v. Carroll, 2011 WL 1907504 *1 (Cal. App. 2011).

17   However, because of the addition of trial issues to this habeas proceeding, especially

18   petitioner's protestations that his attorney did not uncover the facts which would have exculpated

19   him, the undersigned will delve further into the record.  These facts were one-sided in

20   unequivocally implicating petitioner in the burglary and stabbing crime.

21   Susan Cross was an acquaintance of the petitioner; he came to her house on the date of the

22   crime.

23   Q.  What did the defendant talk to you about?

24   [objection omitted]

25   A:  The Witness:  He said he was , uhmm, going to go over where Jerry [the

26   victim] was staying, and he was going to stick him for him and myself so he

27   wouldn't bully anybody anymore.

28   Q. Now, uhmmm, when he said that, uhmmm, did he show you anything?

3

1     A. He showed me the knife.

2   (RT 106.)

3   [about ten minutes after Petitioner left the house]

4     A.  About ten minutes later, he came back and started pounding on my door, and

5       he said—kept saying, Let me in; let me in.  And when I opened the door, he was

6       laying out on my lawn, uhmm, because his arm was hurt.  He was bleeding pretty

7       bad….

8     Q. Did the defendant tell you what happened"

9     [objection overruled]

10    A. He said he got—he said he did it.  He said—he got him and got him good.

11  (RT 106-107.)

12                    ***

13    Q. Did the defendant tell you how he hurt his arm?

14    A. Oh, yes, I'm sorry.  Uhmm, breaking the—the window to get in because they

15      wouldn't open the door.

16    Trudy Tripp lived downstairs from the victim.  She testified to what happened on the

17  morning of the attack.  She called 911.

18    A.  Uhmm, well, I live—on the bottom, and the staircase goes up—upstairs, and

19      when someone is going up the stairs, it just—it sounds like they're beating

20      alongside the house.  And somebody was running up the stairs and, uhmm,

21      hollering, uhmm, I'm going to F-ing kill you; I'm going to—open this door; open

22      this door; I'm going to kill you, and that's all I heard.  I heard banging,  I heard

23      glass breaking.

24  (RT 176.)

25  Afterwards she saw petitioner leave the house in a bloodied state.

26    Genaro Maravilla was the victim of this crime.  He had a criminal history himself, and

27  was on parole abscond status at the time of the crime.  He was initially a reluctant witness.  He

28  testified at first to being stabbed in the hand, but he did not know who did it.  Ultimately, the

4

court permitted the prosecutor to ask leading questions as the witness was being evasive.

> Q.  And, uhmmm, how did that happen, that the knife went in your hand?
>
> A.  I guess the person was at the window, when they (sic) broke the window, went
>
> through—I must have raised my hand up, and it went through my hand.

(RT 199.)

He continued to testify that the glass in the window was broken, and the knife came in and stuck him in the hand.  He did not call the police because he was in abscond status from parole.  However, under prodding by the district attorney, he did relate that he told the detective on the scene that petitioner was the person who stabbed him.  (RT 205.)  He also told the detective that petitioner was beating on the door.

> Q.  Do you recall telling Deputy Gassaway that the defendant was yelling he was
>
> going to kill you or beat you?
>
> A.  I remember that, yeah.
>
> Q.  Did the defendant yell he was going to kill you or beat you?
>
> A.  I'm almost positive, yes.

(RT 209.)

Petitioner did not testify, and the defense case was very short—simply attempted impeachment of the prosecution witnesses.

*Issues*

The undersigned will respond to the issues in the petition in the order presented by Respondent's answer.  Those issues are:

Ineffective Assistance of Counsel (failure to investigate and present exonerating witnesses) (Claim 1)

Ineffective Assistance of Counsel (conflict of interest -- public defender's office had represented the victim and one of the witnesses in other proceedings; trial counsel subsequently received a job in the district attorney's office (Claim 4)

Double Jeopardy and Ex Post Facto Claims (Claims 2 and 3)

/////

The undersigned will also discuss the evidentiary hearing issues in connection with Claims 1 and 4.

*Discussion*

A. Legal Standards

The statutory limitations of federal courts' power to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  The text of § 2254(d) states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

As a preliminary matter, the Supreme Court has recently held and reconfirmed "that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'"  Harrington v. Richter, 131 S. Ct. 770, 785 (2011).

Rather, "when a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."  Id. at 784-785, citing Harris v. Reed, 489 U.S. 255, 265, 109 S. Ct. 1038 (1989) (presumption of a merits determination when it is unclear whether a decision appearing to rest on federal grounds was decided on another basis).  "The presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely."  Id. at 785.

The Supreme Court has set forth the operative standard for federal habeas review of state court decisions under AEDPA as follows:  "For purposes of § 2254(d)(1), 'an unreasonable application of federal law is different from an incorrect application of federal law.'"  Harrington, supra, 131 S. Ct. at 785, citing Williams v. Taylor, 529 U.S. 362, 410, 120 S. Ct. 1495 (2000).

6

1    "A state court's determination that a claim lacks merit precludes federal habeas relief so long as

2    'fairminded jurists could disagree' on the correctness of the state court's decision." Id. at 786,

3    citing Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S. Ct. 2140 (2004).

4         Accordingly, "a habeas court must determine what arguments or theories supported or ...

5    could have supported[] the state court's decision; and then it must ask whether it is possible

6    fairminded jurists could disagree that those arguments or theories are inconsistent with the

7    holding in a prior decision of this Court." Id. "Evaluating whether a rule application was

8    unreasonable requires considering the rule's specificity. The more general the rule, the more

9    leeway courts have in reaching outcomes in case-by-case determinations.'" Id. Emphasizing the

10   stringency of this standard, which "stops short of imposing a complete bar of federal court

11   relitigation of claims already rejected in state court proceedings[,]" the Supreme Court has

12   cautioned that "even a strong case for relief does not mean the state court's contrary conclusion

13   was unreasonable." Id., citing Lockyer v. Andrade, 538 U.S. 63, 75, 123 S. Ct. 1166 (2003).

14        The undersigned also finds that the same deference is paid to the factual determinations of

15   state courts. Under § 2254(d)(2), factual findings of the state courts are presumed to be correct

16   subject only to a review of the record which demonstrates that the factual finding(s) "resulted in a

17   decision that was based on an unreasonable determination of the facts in light of the evidence

18   presented in the state court proceeding." It makes no sense to interpret "unreasonable" in §

19   2254(d)(2) in a manner different from that same word as it appears in § 2254(d)(1) – i.e., the

20   factual error must be so apparent that "fairminded jurists" examining the same record could not

21   abide by the state court factual determination. A petitioner must show clearly and convincingly

22   that the factual determination is unreasonable. See Rice v. Collins, 546 U.S. 333, 338, 126 S. Ct.

23   969, 974 (2006).

24        The habeas corpus petitioner bears the burden of demonstrating the objectively

25   unreasonable nature of the state court decision in light of controlling Supreme Court authority.

26   Woodford v. Viscotti, 537 U.S. 19, 123 S. Ct. 357 (2002). Specifically, the petitioner "must

27   show that the state court's ruling on the claim being presented in federal court was so lacking in

28   justification that there was an error well understood and comprehended in existing law beyond

7

1   any possibility for fairminded disagreement." Harrington, supra, 131 S. Ct. at 786-787. "Clearly

2   established" law is law that has been "squarely addressed" by the United States Supreme Court.

3   Wright v. Van Patten, 552 U.S. 120, 125, 128 S. Ct. 743, 746 (2008). Thus, extrapolations of

4   settled law to unique situations will not qualify as clearly established. See e.g., Carey v.

5   Musladin, 549 U.S. 70, 76, 127 S. Ct. 649, 653-54 (2006) (established law not permitting state

6   sponsored practices to inject bias into a criminal proceeding by compelling a defendant to wear

7   prison clothing or by unnecessary showing of uniformed guards does not qualify as clearly

8   established law when spectators' conduct is the alleged cause of bias injection). The established

9   Supreme Court authority reviewed must be a pronouncement on constitutional principles, or other

10  controlling federal law, as opposed to a pronouncement of statutes or rules binding only on

11  federal courts. Early v. Packer, 537 U.S. 3, 9, 123 S. Ct. 362, 366 (2002).

12          The state courts need not have cited to federal authority, or even have indicated awareness

13  of federal authority in arriving at their decision. Early, supra, 537 U.S. at 8, 123 S. Ct. at 365.

14  Where the state courts have not addressed the constitutional issue in dispute in any reasoned

15  opinion, the federal court will independently review the record in adjudication of that issue.

16  "Independent review of the record is not de novo review of the constitutional issue, but rather, the

17  only method by which we can determine whether a silent state court decision is objectively

18  unreasonable." Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).

19          Finally, if the state courts have not adjudicated the merits of the federal issue, no

20  AEDPA deference is given; the issue is reviewed de novo under general principles of federal law.

21  Stanley v. Cullen, 633 F.3d 852, 860 (9th Cir. 2012). However, when a state court decision on a

22  petitioner's claims rejects some claims but does not expressly address a federal claim, a federal

23  habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the

24  merits. Johnson v. Williams, ___ U.S. ___, 133 S. Ct. 1088, 1091 (2013).

25          B.  Ineffective Assistance of Counsel (Investigating/Calling Witnesses)

26          Respondent correctly does not press the Superior Court's, "all issues" are barred by

27  procedural default for not having raised the issues on appeal, in that the ineffective assistance of

28  counsel herein could not have been raised on appeal, given that petitioner desires to go outside the

8

1   record to prove the claim.  Respondent instead opposes petitioner's claim on the merits.  The

2   merits of the claim are governed by AEDPA because the state issued an alternative holding on the

3   merits.  See Harris v. Reed, 489 U.S. 255, 264 (9th Cir. 1992)  (the federal court may reach the

4   merits as state courts are entitled to issue alternative procedural and substantive holdings).

5          The standards for ineffective assistance of counsel in the AEDPA context are well

6   established.

> The clearly established federal law with respect to claims of
> ineffective assistance is Strickland v. Washington and its Supreme
> Court progeny.  Pinholster, 131 S. Ct. at 1403.  To establish a claim
> of constitutionally ineffective assistance of trial counsel, the
> petitioner must show that counsel's performance was deficient and
> that counsel's deficient performance prejudiced the defense.
> Strickland, 466 U.S. at 687, 104 S. Ct. 2052. To establish that
> counsel's performance was deficient, the petitioner must show that
> counsel's representation "fell below an objective standard of
> reasonableness" under "all the circumstances."  Id. at 688, 104 S.
> Ct. 2052.  To establish prejudice from counsel's errors during the
> penalty phase of a capital case, the petitioner must show that "there
> is a reasonable probability that, absent the errors, the sentencer—
> including an appellate court, to the extent it independently reweighs
> the evidence—would have concluded that the balance of
> aggravating and mitigating circumstances did not warrant death."
> Id. at 695, 104 S. Ct. 2052.  "A reasonable probability is a
> probability sufficient to undermine confidence in the outcome."  Id.
> at 694, 104 S. Ct. 2052.  "That requires a 'substantial,' not just
> 'conceivable,' likelihood of a different result."  Pinholster, 131 S.
> Ct. at 1403 (quoting Richter, 131 S. Ct. at 792).

18   Sully v. Ayers, 725 F.3d 1057, 1068 (9th Cir. 2013).

19   However, the court does not apply this standard de novo.

> This statute limits our authority to grant a federal writ by
> establishing two "highly deferential" standards.  Premo v. Moore, —
> —U.S. ——, 131 S.Ct. 733, 740, 178 L.Ed.2d 649 (2011).  "The
> pivotal question is whether the state court's application of the
> Strickland standard was unreasonable. This is different from asking
> whether defense counsel's performance fell below Strickland's
> standard."  Harrington v. Richter, —— U.S. ——, 131 S. Ct. 770,
> 785, 178 L.Ed.2d 624 (2011).  Thus, a state court's determination
> that a claim lacks merit bars federal habeas relief so long as
> "fairminded jurists could disagree" on the state court's decision.
> Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S.Ct. 2140, 158
> L.Ed.2d 938 (2004).  Moreover, to grant a habeas petition under §
> 2254(d)(2), a state court's factual findings must be "clearly
> erroneous," not just merely debatable.  Torres v. Prunty, 223 F.3d
> 1103, 1107–08 (9th Cir.2000).  These stringent standards "guard
> against extreme malfunctions in the state criminal justice systems,
> not as a substitute for ordinary error correction through appeal."

1    Richter, 131 S.Ct. at 786 (internal quotation marks omitted).

2    Griffith v. Harrington, 727 F.3d 940, 945 (9th Cir. 2013).

3        For his ineffective assistance claim, petitioner asserts among a laundry list of pure

4    conclusions that his counsel was ineffective because he failed "to investigate the victim" because

5    if he had, the attorney would have found out that the victim, Genaro Maravilla, was prepared to

6    testify that petitioner did not enter his apartment.  Petitioner does not address the actual testimony

7    of Maravilla.  As shown above, Maravilla was a reluctant witness who initially testified that a

8    hand with a knife broke his window and stabbed him in the hand.  However, even if this were the

9    sum total of the facts, a stabbing hand entering the apartment is an entry.  See People v. Valencia,

10   28 Cal.4th 1, 8, 120 Cal.Rptr.2d 131 (2002), disapproved on other grounds, People v. Yarbrough,

11   54 Cal.4th 889 (2012) ("'the California courts have found that a burglary is complete upon the

12   slightest partial entry of any kind, with the requisite intent'").  Maravilla initially testified that he

13   did not see the assailant.  Unfortunately for petitioner, Maravilla had spoken to the deputy who

14   arrived on the scene on the stabbing day; he told the deputy that it was indeed petitioner who was

15   beating on his door threatening Maravilla's life.  Thus, Maravilla, who was a drug dealer and on

16   parole abscond status and who was initially prepared not to identify petitioner, got caught in his

17   half-truths.  The jury was free to believe Maravilla on the stabbing day (and the other witnesses)

18   as opposed to an initially disingenuous Maravilla on testimony day.  The outcome had nothing to

19   do with defense counsel's alleged failure to investigate.  In addition, all involved knew that

20   Maravilla was a drug dealer on abscond status—there was nothing else to investigate.

21       The undersigned need not discuss petitioner's other allegations, e.g., "trial counsel failed

22   to research the facts of the case," "trial counsel failed to subpoena witnesses (Tesla Carroll—

23   apparently the wife of petitioner) which was crucial and/or critical to the case."  No declaration,

24   or even discussion, about the specifics of this supposed witness testimony is included in the

25   petition.  Petitioner simply asserts that Tesla Carroll "would have testified to petitioner['s] actual

26   /////

27   /////

28
                                          10

1    innocence." (Petition, Dkt. 1 at electronic page 31.)  All the allegations of ineffective assistance

2    are simply bereft-of-facts conclusions.[4]  Neither the Superior Court, not this court, recognizes

3    such conclusions as actionable.  McQueary v. Blodgett, 924 F.2d 829, 834-35 (9th Cir.1991).

4            C.  Ineffective Assistance of Counsel (Conflict of Interest)

5            Petitioner contends that the Office of Public Defender, but not his counsel from that

6    office, at one time in the past represented the victim/witness as well as petitioner's wife, the

7    witness who was not called.  The petitioner does not relate why this asserted conflict, if true,

8    adversely affected his lawyer's work.  Nor does petitioner attempt to show that had counsel not

9    been adversely impacted by the conflict, the outcome of his trial may well have been different.

10   Petitioner simply terms all of these problems as an actual conflict of interest.  Petitioner also

11   complains that his counsel later was employed by the District Attorney's office, and that counsel

12   must have not done his best in order to curry favor with that office.

13           The Supreme Court has held that a criminal defendant has a
         constitutional right to assistance of conflict-free counsel.  Strickland
14       v. Washington, 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674
         (1984).  Where the conflict stems from counsel's representation of
15       multiple defendants, the petitioner "must establish that an actual
         conflict of interest adversely affected his lawyer's performance."
16       Cuyler v. Sullivan, 446 U.S. 335, 350, 100 S.Ct. 1708, 64 L.Ed.2d
         333 (1980).  The Supreme Court has defined an "actual conflict" by
17       the effect a potential conflict had on counsel's performance.
         Mickens v. Taylor, 535 U.S. 162, 171, 122 S.Ct. 1237, 152 L.Ed.2d
18       291 (2002).

19           Where defense counsel timely points out a conflict of interest in
         joint representation, the trial court is required to investigate further;
20       ignoring counsel's objection mandates automatic reversal of the
         resulting conviction.  See Holloway v. Arkansas, 435 U.S. 475,
21       488, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978).  Conflicts can also arise
         from successive representation, particularly when a substantial
22       relationship exists between the cases, such that the "factual contexts
         of the two representations are similar or related."  Trone v. Smith,
23       621 F.2d 994, 998 (9th Cir.1980); see also Fitzpatrick v.
         McCormick, 869 F.2d 1247, 1252 (9th Cir.1989).  The Supreme
24       Court, however, has left open the question whether conflicts in
         successive representation that affect an attorney's performance
25       require a showing of prejudice for reversal.  See Mickens, 535 U.S.
         at 176, 122 S.Ct. 1237.

26

27   _____

28   [4] Petitioner has added some specificity, but no support, in his request for evidentiary hearing.  The
     section dealing with this request will discuss the further allegations.

1   Houston v. Schomig, 533 F.3d 1076, 1081 (9th Cir. 2008).

2
> Houston's lawyer, Craig Jorgenson, never personally represented
> the witness, Chadwick, against his client Houston. Thus, in this
3
> context, the Sixth Amendment's right to conflict-free counsel was
> violated only if Jorgenson's office's prior representation of
4
> Chadwick "adversely affect[ed] [his] performance."

5
> Alberni v. McDaniel, 458 F.3d 860, 870 (9th Cir.2006).  This is so
> because "'an actual conflict of interest means precisely a conflict
6
> that affected counsel's performance—as opposed to a mere
> theoretical division of loyalties.'"  Id. (quoting Mickens v. Taylor,
7
> 535 U.S. 162, 171, 122 S. Ct. 1237, 152 L.Ed.2d 291 (2002)
> (emphasis and alterations omitted)).
8

9   Houston v. Schomig (appeal after remand), 637 F.3d 976, 978 (9th Cir. 2011) (finding no actual

10   conflict).  See also Lor v. Felker, 2013 WL 2156549 (E.D. Cal. May 17, 2013).

11          Assuming the truth of petitioner's factual allegations, i.e., that the public defender's office

12   did indeed represent the victim and petitioner's wife in previous criminal proceedings, and

13   ignoring the fact that no potential conflict was apparently addressed to the judge, petitioner

14   travels no factual distance in demonstrating that these prior representations adversely impacted

15   his attorney's representation.  Petitioner must demonstrate in a credible way that his counsel

16   pulled punches in representing his client when cross-examining the victim/witness because of this

17   previous representation, or did not call petitioner's wife because of this same problem.  His attack

18   on his attorney's trial tactics with respect to cross-examining the witness ignores the record.

19   Again, as shown above, the victim turned into a reluctant witness for the prosecution—so

20   reluctant that the prosecutor was permitted to ask leading questions on direct examination; so

21   reluctant that the witness initially refused to identify petitioner as his attacker.  Petitioner does not

22   answer the question why his counsel would want to attack this reluctant witness.  Indeed, there is

23   no logical answer to petitioner's assertion.  Moreover, he simply does not submit any credible

24   statements from his wife as to her potential, favorable testimony.  (She was initially listed as a

25   prosecution witness.)

26          Petitioner's exclaimed point that his attorney rested after a very short defense ignores the

27   overwhelming evidence presented by the prosecution.  The victim ultimately identified petitioner

28   as his attacker after much prodding by the district attorney, and Ms. Cross repeated petitioner's

1   damning admissions, made before and after the crime, that he was going (had gone) to

2   petitioner's apartment to stab and kill him.  There simply was not much his counsel could do

3   except drag out a hopeless case.  If the case was not hopeless, petitioner has not to this day related

4   a single fact as to what might have given it hope.

5            Finally, petitioner has supplied no details about his counsel's asserted entry into the

6   district attorney's office, nor, as stated above, has petitioner shown any adverse effect from this

7   purported conflict.

8            Accordingly, petitioner has not demonstrated an actual conflict.

9            D.   Evidentiary Hearing

10           In his later filed request for an evidentiary hearing, petitioner adds a few factual

11   assertions, not all of them, or any of them, good for his case.  He now states that his trial counsel

12   *did* hire an investigator, who *did* attempt to interview petitioner's wife and the victim.

13                    "[B]oth said they had nothing to say.  Ms. Carroll was living in the
                       apartment of said victim, Genaro Maravilla.  Ms. Carroll was in the
14                    apartment and witnessed the whole incident.  Petitioner's counsel
                       subpoenaed petitioners wife and eye witness Tesla Carroll, See
15                    Exhibit "A" and A1 [which show that the *prosecution* had listed
                       Ms. Carroll as a witness], who could and would of testified
16                    petitioner in fact did not jump into the apartments broken window.
                       Ms. Carroll would have testified that petitioner was in fact innocent
17                    of all charges.

18                                              ***

19                    Genaro Maravilla, said victim, testified no less than three times
                       under oath that petitioner never jumped through the broken window
20                    into his apartment….Mr. Maravilla repeatedly testified petitioner
                       never entered his apartment.  Petitioners counsel Public Defender
21                    William Bateman never cross-examined victim witness about his
                       [favorable] testimony which proves petitioners actual innocent
22                    [sic].

23   Request for Evidentiary hearing, Dkt. 27 electronic pages 2-3.[5]

24           Petitioner adds no new facts about the Office of the Public Defender's

25   representation of the two persons, Tesla Carroll and the victim, Maravilla.

26

27   [5] As previously discussed, California law did not require petitioner to "jump through the window"
     in order to be guilty of burglary.  His stabbing hand going through the window, or the window
28   pieces, was all that was necessary.

1    The reason to deny the request for evidentiary hearing stems from the case of

2    Cullen v. Pinholster, __U.S.__, 131 S. Ct. 1388 (2011).  Only the record before the state

3    court may be initially considered.  Pizzuto v. Blades, 729 F.3d 1211, 1216 (9th Cir. 2013).

4    If this record demonstrates a constitutional error in the AEDPA sense, discovery and an

5    evidentiary hearing take place to finally determine the merits of a constitutional claim.  Id.

6    See also Lewis v. Ayers, 2011 WL 2260784 (E.D. Cal. Jun. 7, 2011).   Moreover, if the

7    state court was AEDPA unreasonable in not holding an evidentiary hearing (or allowing

8    discovery) based on the record before it, the federal court may allow discovery and/or an

9    evidentiary hearing.  Gulbrandson v. Ryan, __F.3d__, 2013 WL 5779188 *7 (9th Cir.

10   2013).  In the absence of these two very limited exceptions, a petitioner may not be

11   granted an evidentiary hearing in federal court.

12    The baseless allegations submitted in this federal case were the ones also presented

13   to the state court.  While some of the exhibits attached to the Petition here and the Request

14   for Evidentiary Hearing were presented to the state courts, petitioner in essence seeks a

15   slight expansion of the record here.  All of this does not matter.  Assuming that the very

16   same exhibits here were before the state courts, petitioner still did not submit any credible

17   potential testimony from his apparently estranged wife.  Her asserted testimony as stated

18   by petitioner that she did not see petitioner jump through the window is legally irrelevant

19   in any event.  Again, there could be no tactical advantage for defense counsel to have

20   made a lengthy and vigorous cross-examination of the victim/witness because defense

21   counsel could at least argue that Maravilla's initial testimony was the one to be believed.

22   The limited cross-examination attempted to get Maravilla to confirm his initial testimony.

23   (RT 220-221.)  The danger of pushing Marvilla too much on cross-examination became

24   apparent at RT 225, 233, 234 when he re-adopted, more or less, what he had said to the

25   detective on the scene.  Maravilla reiterated that petitioner had stabbed his hand when the

26   hand and knife came through the window.   The remainder of cross-examination dealt

27   with Maravilla's mental and drug problems as well as his abscond status.  Counsel made a

28   futile attempt to get Maravilla to testify that he had come to the door with a knife and

14

1   confronted petitioner with it.

2       In short, the state court committed no AEDPA error in denying any claim of

3   ineffective assistance of counsel, witness or conflict.  It also was well within reason not to

4   order discovery or an evidentiary hearing based on the allegations before it.  No evidence

5   was submitted which suggested that Tesla Carroll should have been called as a witness or

6   that counsel's efforts were hampered in any way due to the Public Defender's office

7   having previously represented tesla Carroll or Maravilla.  An evidentiary hearing would

8   have been a waste of time.  Certainly, no evidence was submitted which would undermine

9   the confidence of any court in the outcome of the verdict.  The request for an evidentiary

10  hearing is denied.  The undersigned would adopt these conclusions even if reviewing the

11  request for evidentiary hearing under the "old rules" in the absence of  Cullen. [6]

12      E.  Double Jeopardy and Ex Post Facto Claim

13      Petitioner claims that the two prior, serious felonies which enabled the court to

14  sentence him as a "three strikes" defendant, i.e., eligible for an indeterminate life

15  sentence, were incurred long before his underlying crime herein, and even before the

16  Three Strikes law in California was enacted.[7]  Hence, he claims, that the use of such priors

17  violated the Double Jeopardy and Ex Post Facto protections in the Constitution.

18      Respondent reads the petition in a more expansive way given some of the

19  argument set forth in the petition.  Interpreting the petition as also challenging the

20  concurrent use of two recidivist state enhancement statutes in sentencing petitioner for his

21  current crimes, respondent argues that the use of dual recidivist enhancements to enhance

22  the punishment for the underlying crime or crimes does not violate double jeopardy.

23

24  [6] "[W]here a petitioner raises a colorable claim of ineffective assistance, and where there has not
    been a state or federal hearing on this claim, we must remand to the district court for an

25  evidentiary hearing." Stankewitz v. Woodford, 365 F.3d 706, 708 (9th Cir.2004) ( quoting Smith
    v. McCormick, 914 F.2d 1153, 1170 (9th Cir.1990));  Gonzalez v. Knowles, 515 F.3d 1006, 1018

26  (Hawkins, J. dissent) (9th Cir. 2008).  Petitioner's problem here is that his allegations do not rise
    to the level of colorable allegations, i.e., if believed true would require a grant of the petition).

27  [7] Petitioner incurred a federal bank robbery conviction as well as a state robbery conviction in the

28  late 1970s.

15

1    The first attack on the claim is that of procedural default, or bar, due to the fact

2  that the sentencing claims should have been brought on direct appellate review.  Although

3  the Superior Court cited an older case for this proposition, the more modern cases of Ex

4  Parte Dixon, 41 Cal. 2d 756 (1953) and In re Harris, 5 Cal. 4th 813 (1993) stand for the

5  same proposition.  However, the Ninth Circuit has frowned upon the use of this bar in

6  review of state habeas decisions, finding that the bar is not independent and adequate.  See

7  Cross v. Sisto, 676 F.3d 1172, 1179 (9th Cir. 2012), citing LaCrosse v. Kernan, 244 F.3d

8  702, 704-05 (9th Cir. 2001), in turn citing Park v. California, 202 F.3d 1146, 1151-52 (9th

9  Cir. 2000).  Rather than embark upon a lengthy voyage to see if things have changed

10  regarding the adequacy and independence of the bar, it is best to simply avoid the

11  default/bar and go to the merits, as federal law entitles the undersigned to do.  Lambrix v.

12  Singletary, 520 U.S. 518, 524-25, 117 S. Ct. 1517 (1997).

13    It is more than well established that such claims as petitioner raises are not

14  cognizable in habeas corpus review.  See United States v. Kaluna, 192 F.3d 1188, 1198-99

15  (9th Cir. 1999) (en banc) (finding that the federal Three Strikes provision, 18 U.S.C.

16  3559(c)(1) does not violate double jeopardy principles by utilization of an "old crime" to

17  enhance the sentence of a present conviction).  See also id at 1199, finding that *ex post*

18  *facto* principles are not violated as long as the recidivist enhancement statute was in force

19  at the time the present time was committed.  This case has direct applicability to

20  petitioner's contentions about the use of California's Three Strikes Statute, or any

21  recidivist enhancement at issue herein.  Clearly, there is no Supreme Court precedent

22  which rejects the Kaluna holdings, nor is there such precedent which has found

23  California's similar sentencing scheme to be violative of double jeopardy or *ex post facto*

24  constitutional protections.  Under AEDPA principles, the claim must be denied.

25    To the extent that petitioner does claim that use of dual recidivist enhancement

26  (use of priors in the three strikes context [Cal. Penal Code 667(e)] as well as the five year

27  recidivist enhancement [Cal. Penal Code 667(a)]) is "double punishment," the short

28  answer is that penalty enhancements are not encompassed by Double Jeopardy

1   protections, at least where it is clear that the legislature intended the dual use.

> The guarantee against double jeopardy includes three distinct
> constitutional protections. "It protects against a second prosecution
> for the same offense after acquittal. It protects against a second
> prosecution for the same offense after conviction. And it protects
> against multiple punishment for the same offense." North Carolina
> v. Pearce, 395 U.S. 711, 717, 89 S. Ct. 2072, 23 L.Ed.2d 656
> (1969); Brown v. Ohio, 432 U.S. 161, 165, 97 S. Ct. 2221, 53
> L.Ed.2d 187 (1977). Here, Plascencia contends that by imposing an
> additional twenty-five years for her use of a firearm, the trial court
> violated the third of these guarantees. We disagree.
>
> In Missouri v. Hunter, 459 U.S. 359, 366, 103 S. Ct. 673, 74
> L.Ed.2d 535 (1983), the Supreme Court made clear that the
> protection against multiple punishments for the same offense did
> not necessarily preclude cumulative punishments in a single
> prosecution. The key to determining whether multiple charges and
> punishments violate double jeopardy is legislative intent. Id. at
> 368–69, 103 S.Ct. 673. When the legislature intends to impose
> multiple punishments, double jeopardy is not invoked. Id.

Plascencia v. Alameida, 467 F.3d 1190, 1204 (9th Cir. 2006).

See also Cox v. Biter, 2013 WL 3288166 *10 (C.D. Cal. Jun. 28, 2013); Horsley v.

Haviland, 2012 WL 2856851 (E.D. Cal. Jul. 11, 2012) ("In addition, double jeopardy

protections do not apply to the imposition of sentence enhancements because sentence

enhancements do not 'punish' a defendant within the meaning of double jeopardy");

United States v. Watts, 519 U.S. 148, 154, 117 S. Ct. 633, 136 L.Ed.2d 554 (1997).

As argued by respondent, the California legislature has specifically authorized the

use of the dual recidivist enhancement.  People v. Acosta, 29 Cal. 4th 105, 131 (2002);

People v. Carthwright, 39 Cal. App. 4th 1123, 1138-39 (1995) (both cases expressly

finding the legislature's intent).

*Conclusion*

Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Cases, this court must

issue or deny a certificate of appealability when it enters a final order adverse to the applicant.  A

certificate of appealability may issue only "if the applicant has made a substantial showing of the

denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  For the reasons set forth in these

findings and recommendations, a substantial showing of the denial of a constitutional right has

not been made in this case.

1      Accordingly: IT IS HEREBY ORDERED: petitioner's request for an evidentiary hearing,

2   filed August 19, 2013 (ECF No. 27), is denied.

3      IT IS HEREBY RECOMMENDED that:

4      1.  The petition be denied in its entirety; and

5      2.  The District Court decline to issue a certificate of appealability.

6      These findings and recommendations are submitted to the United States District

7   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within

8   twenty-one days after being served with these findings and recommendations, any party

9   may file written objections with the court and serve a copy on all parties.  Such a

10   document should be captioned "Objections to Magistrate Judge's Findings and

11   Recommendations."  Any reply to the objections shall be served and filed within fourteen

12   days after service of the objections.  The parties are advised that failure to file objections

13   within the specified time may waive the right to appeal the District Court's order.

14   Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

15   DATED: 11/27/2013

16                                        /s/ Gregory G. Hollows
                                      GREGORY G. HOLLOWS
17                               UNITED STATES MAGISTRATE JUDGE

18

19

20

21

22

23

24

25

26

27

28