UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES E. CARROLL,<br><br>    Petitioner,<br><br>    v.<br><br>DIAZ Warden,<br><br>    Respondent. | No. 2:12-cv-2736 TLN GGH P<br><br>ORDER; and<br><br>FINDINGS AND RECOMMENDATIONS |

*Introduction and Summary*

Petitioner, James Carroll was first charged with the crimes at issue on September 9, 2009. Just before trial started, the charges were superseded in an information dated February 3, 2010. On February 11, 2010, petitioner was convicted of first degree residential burglary (Cal. Penal Code § 459), assault with a deadly weapon (Cal. Penal Code § 245 (a)(1)), and personal use of a knife in the commission of a burglary (Cal. Penal Code § 12022(b)). Petitioner was also found to have incurred two prior "strikes" as well as prior serious felony convictions (Cal. Penal Code §§1170.12, 667(a)). Petitioner received an indeterminate sentence of 25 years to life for the residential burglary (three strikes sentence), a one year enhancement for use of a knife, and an

/////

additional five years for each of the prior serious, felony convictions—total of 36 years to life imprisonment.[1]

On appeal, petitioner only attacked aspects of his sentence: his 1978 federal conviction for bank robbery should not have counted as a strike; failure to "strike a strike" so that he would not be eligible for three strikes was error. The petition for review in the California Supreme Court on these issues was denied on July 27, 2011.

Petitioner then turned to the Superior Court on January 19, 2012 with a petition for habeas corpus with a broadened attack on his conviction.[2] He claimed ineffective assistance of counsel in several respects, primarily an alleged failure of his counsel to investigate exonerating witnesses, and attorney conflict of interest. He also attacked his sentence on *ex post facto* and double jeopardy grounds. This petition was denied in a reasoned decision on procedural and substantive grounds.

The Superior Court decided on February 6, 2012 that "[f]irst and foremost, petitioner failed to raise these issues in his appeal" citing to In re Drew, 188 Cal. 717 (1922). The Superior Court then went on to decide the issues on their merits.[3] With respect to the ineffective assistance of counsel issues and the alleged conflict of interest, the Superior Court found that petitioner's presentation was entirely conclusory, i.e., no evidentiary submittal was made with respect to the exonerating witnesses, and evidence regarding the conflict of interest was lacking. With respect to the sentencing issues, the court found that no law required that petitioner be advised of the future use of [past] convictions when those convictions were incurred. Moreover, the use of prior convictions to enhance a present sentence was not a violation of double jeopardy or *ex post facto* protections in the Constitution.

---

[1] Petitioner also received a suspended 35 years to life sentence on the assault with a deadly weapon conviction.

[2] The record supplied by respondent is confusing in that petitioner had also filed a writ of habeas corpus on January 2, 2009, a date which preceded the filing of charges in this case. That petition was denied on March 2, 2009, and has no bearing on the issues in this case.

[3] The segue in the Superior Court opinion is unclear in that after the denial on procedural grounds, the opinion continued: "Petitioner *next complains* [of the very issues which the court had just denied on procedural grounds]" (emphasis added). However, it appears to the undersigned that the segue was simply an awkward way to reach the merits in the alternative.

1    The follow-up petitions to the appellate court and state supreme court were denied without
2    comment. Therefore, the higher courts are presumed to have adopted the last explained decision,
3    in this case, of the Superior Court. Plascencia v. Alameda, 467 F.3d 1190, 1198 (9th Cir. 2006).
4    On November 1, 2012, the federal petition was filed in the Eastern District of California.
5    An answer and traverse were filed as well as an opposed request for an evidentiary hearing. For
6    the reasons set forth below, the request for evidentiary hearing is denied, and the petition should
7    be denied in its entirety.

*Underlying Facts*

Because only sentencing issues were raised before the appellate court on direct review, the statement of facts was much truncated.

> Defendant began beating on the door of an acquaintance's apartment one afternoon and yelling he was going to kill the man. When the acquaintance refused to open the door, defendant broke the apartment's front window, jumped through it, and started trying to stab the man while the victim put up his hands and tried to defend himself.
> Officers followed a blood trail and ultimately located defendant running away from law enforcement officers.

People v. Carroll, 2011 WL 1907504 *1 (Cal. App. 2011).

However, because of the addition of trial issues to this habeas proceeding, especially petitioner's protestations that his attorney did not uncover the facts which would have exculpated him, the undersigned will delve further into the record. These facts were one-sided in unequivocally implicating petitioner in the burglary and stabbing crime.

Susan Cross was an acquaintance of the petitioner; he came to her house on the date of the crime.

> Q. What did the defendant talk to you about?
>     [objection omitted]
> A: The Witness: He said he was, uhmm, going to go over where Jerry [the
>    victim] was staying, and he was going to stick him for him and myself so he
>    wouldn't bully anybody anymore.
> Q. Now, uhmmm, when he said that, uhmmm, did he show you anything?

3

1    A. He showed me the knife.

2  (RT 106.)

3  [about ten minutes after Petitioner left the house]

4    A. About ten minutes later, he came back and started pounding on my door, and

5    he said—kept saying, Let me in; let me in. And when I opened the door, he was

6    laying out on my lawn, uhmm, because his arm was hurt. He was bleeding pretty

7    bad….

8    Q. Did the defendant tell you what happened"

9    [objection overruled]

10   A. He said he got—he said he did it. He said—he got him and got him good.

11 (RT 106-107.)

12            \*\*\*

13   Q. Did the defendant tell you how he hurt his arm?

14   A. Oh, yes, I'm sorry. Uhmm, breaking the—the window to get in because they

15   wouldn't open the door.

16  Trudy Tripp lived downstairs from the victim. She testified to what happened on the

17 morning of the attack. She called 911.

18   A. Uhmm, well, I live—on the bottom, and the staircase goes up—upstairs, and

19   when someone is going up the stairs, it just—it sounds like they're beating

20   alongside the house. And somebody was running up the stairs and, uhmm,

21   hollering, uhmm, I'm going to F-ing kill you; I'm going to—open this door; open

22   this door; I'm going to kill you, and that's all I heard. I heard banging, I heard

23   glass breaking.

24 (RT 176.)

25 Afterwards she saw petitioner leave the house in a bloodied state.

26  Genaro Maravilla was the victim of this crime. He had a criminal history himself, and

27 was on parole abscond status at the time of the crime. He was initially a reluctant witness. He

28 testified at first to being stabbed in the hand, but he did not know who did it. Ultimately, the

1   court permitted the prosecutor to ask leading questions as the witness was being evasive.

2        Q. And, uhmmm, how did that happen, that the knife went in your hand?

3        A. I guess the person was at the window, when they (sic) broke the window, went

4        through—I must have raised my hand up, and it went through my hand.

5   (RT 199.)

6   He continued to testify that the glass in the window was broken, and the knife came in and stuck

7   him in the hand. He did not call the police because he was in abscond status from parole.

8   However, under prodding by the district attorney, he did relate that he told the detective on the

9   scene that petitioner was the person who stabbed him. (RT 205.) He also told the detective that

10  petitioner was beating on the door.

11       Q. Do you recall telling Deputy Gassaway that the defendant was yelling he was

12       going to kill you or beat you.

13       A. I remember that, yeah.

14       Q. Did the defendant yell he was going to kill you or beat you?

15       A. I'm almost positive, yes.

16  (RT 209.)

17       Petitioner did not testify, and the defense case was very short—simply attempted

18  impeachment of the prosecution witnesses.

19  *Issues*

20       The undersigned will respond to the issues in the petition in the order presented by

21  Respondent's answer. Those issues are:

22  Ineffective Assistance of Counsel (failure to investigate and present exonerating witnesses)

23  (Claim 1)

24  Ineffective Assistance of Counsel (conflict of interest -- public defender's office had represented

25  the victim and one of the witnesses in other proceedings; trial counsel subsequently received a job

26  in the district attorney's office (Claim 4)

27  Double Jeopardy and Ex Post Facto Claims (Claims 2 and 3)

28  /////

The undersigned will also discuss the evidentiary hearing issues in connection with Claims 1 and 4.

*Discussion*

    A. <u>Legal Standards</u>

The statutory limitations of federal courts' power to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). The text of § 2254(d) states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

As a preliminary matter, the Supreme Court has recently held and reconfirmed "that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" <u>Harrington v. Richter</u>, 131 S. Ct. 770, 785 (2011).

Rather, "when a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." <u>Id</u>. at 784-785, citing <u>Harris v. Reed</u>, 489 U.S. 255, 265, 109 S. Ct. 1038 (1989) (presumption of a merits determination when it is unclear whether a decision appearing to rest on federal grounds was decided on another basis). "The presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely." <u>Id</u>. at 785.

The Supreme Court has set forth the operative standard for federal habeas review of state court decisions under AEDPA as follows: "For purposes of § 2254(d)(1), 'an unreasonable application of federal law is different from an incorrect application of federal law.'" <u>Harrington</u>, <u>supra</u>, 131 S. Ct. at 785, citing <u>Williams v. Taylor</u>, 529 U.S. 362, 410, 120 S. Ct. 1495 (2000).

1   "A state court's determination that a claim lacks merit precludes federal habeas relief so long as

2   'fairminded jurists could disagree' on the correctness of the state court's decision." Id. at 786,

3   citing Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S. Ct. 2140 (2004).

4       Accordingly, "a habeas court must determine what arguments or theories supported or ...

5   could have supported[] the state court's decision; and then it must ask whether it is possible

6   fairminded jurists could disagree that those arguments or theories are inconsistent with the

7   holding in a prior decision of this Court." Id. "Evaluating whether a rule application was

8   unreasonable requires considering the rule's specificity. The more general the rule, the more

9   leeway courts have in reaching outcomes in case-by-case determinations.'" Id. Emphasizing the

10  stringency of this standard, which "stops short of imposing a complete bar of federal court

11  relitigation of claims already rejected in state court proceedings[,]" the Supreme Court has

12  cautioned that "even a strong case for relief does not mean the state court's contrary conclusion

13  was unreasonable." Id., citing Lockyer v. Andrade, 538 U.S. 63, 75, 123 S. Ct. 1166 (2003).

14      The undersigned also finds that the same deference is paid to the factual determinations of

15  state courts. Under § 2254(d)(2), factual findings of the state courts are presumed to be correct

16  subject only to a review of the record which demonstrates that the factual finding(s) "resulted in a

17  decision that was based on an unreasonable determination of the facts in light of the evidence

18  presented in the state court proceeding." It makes no sense to interpret "unreasonable" in §

19  2254(d)(2) in a manner different from that same word as it appears in § 2254(d)(1) – i.e., the

20  factual error must be so apparent that "fairminded jurists" examining the same record could not

21  abide by the state court factual determination. A petitioner must show clearly and convincingly

22  that the factual determination is unreasonable. See Rice v. Collins, 546 U.S. 333, 338, 126 S. Ct.

23  969, 974 (2006).

24      The habeas corpus petitioner bears the burden of demonstrating the objectively

25  unreasonable nature of the state court decision in light of controlling Supreme Court authority.

26  Woodford v. Viscotti, 537 U.S. 19, 123 S. Ct. 357 (2002). Specifically, the petitioner "must

27  show that the state court's ruling on the claim being presented in federal court was so lacking in

28  justification that there was an error well understood and comprehended in existing law beyond

7

any possibility for fairminded disagreement." Harrington, supra, 131 S. Ct. at 786-787. "Clearly established" law is law that has been "squarely addressed" by the United States Supreme Court. Wright v. Van Patten, 552 U.S. 120, 125, 128 S. Ct. 743, 746 (2008). Thus, extrapolations of settled law to unique situations will not qualify as clearly established. See e.g., Carey v. Musladin, 549 U.S. 70, 76, 127 S. Ct. 649, 653-54 (2006) (established law not permitting state sponsored practices to inject bias into a criminal proceeding by compelling a defendant to wear prison clothing or by unnecessary showing of uniformed guards does not qualify as clearly established law when spectators' conduct is the alleged cause of bias injection). The established Supreme Court authority reviewed must be a pronouncement on constitutional principles, or other controlling federal law, as opposed to a pronouncement of statutes or rules binding only on federal courts. Early v. Packer, 537 U.S. 3, 9, 123 S. Ct. 362, 366 (2002).

The state courts need not have cited to federal authority, or even have indicated awareness of federal authority in arriving at their decision. Early, supra, 537 U.S. at 8, 123 S. Ct. at 365. Where the state courts have not addressed the constitutional issue in dispute in any reasoned opinion, the federal court will independently review the record in adjudication of that issue. "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).

Finally, if the state courts have not adjudicated the merits of the federal issue, no AEDPA deference is given; the issue is reviewed de novo under general principles of federal law. Stanley v. Cullen, 633 F.3d 852, 860 (9th Cir. 2012). However, when a state court decision on a petitioner's claims rejects some claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. Johnson v. Williams, ___ U.S. ___, 133 S. Ct. 1088, 1091 (2013).

B. Ineffective Assistance of Counsel (Investigating/Calling Witnesses)

Respondent correctly does not press the Superior Court's, "all issues" are barred by procedural default for not having raised the issues on appeal, in that the ineffective assistance of counsel herein could not have been raised on appeal, given that petitioner desires to go outside the

8

record to prove the claim. Respondent instead opposes petitioner's claim on the merits. The merits of the claim are governed by AEDPA because the state issued an alternative holding on the merits. See Harris v. Reed, 489 U.S. 255, 264 (9th Cir. 1992) (the federal court may reach the merits as state courts are entitled to issue alternative procedural and substantive holdings).

The standards for ineffective assistance of counsel in the AEDPA context are well established.

> The clearly established federal law with respect to claims of ineffective assistance is Strickland v. Washington and its Supreme Court progeny. Pinholster, 131 S. Ct. at 1403. To establish a claim of constitutionally ineffective assistance of trial counsel, the petitioner must show that counsel's performance was deficient and that counsel's deficient performance prejudiced the defense. Strickland, 466 U.S. at 687, 104 S. Ct. 2052. To establish that counsel's performance was deficient, the petitioner must show that counsel's representation "fell below an objective standard of reasonableness" under "all the circumstances." Id. at 688, 104 S. Ct. 2052. To establish prejudice from counsel's errors during the penalty phase of a capital case, the petitioner must show that "there is a reasonable probability that, absent the errors, the sentencer—including an appellate court, to the extent it independently reweighs the evidence—would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." Id. at 695, 104 S. Ct. 2052. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694, 104 S. Ct. 2052. "That requires a 'substantial,' not just 'conceivable,' likelihood of a different result." Pinholster, 131 S. Ct. at 1403 (quoting Richter, 131 S. Ct. at 792).

Sully v. Ayers, 725 F.3d 1057, 1068 (9th Cir. 2013).

However, the court does not apply this standard *de novo*.

> This statute limits our authority to grant a federal writ by establishing two "highly deferential" standards. Premo v. Moore, –––U.S. ––––, 131 S.Ct. 733, 740, 178 L.Ed.2d 649 (2011). "The pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard." Harrington v. Richter, ––– U.S. ––––, 131 S. Ct. 770, 785, 178 L.Ed.2d 624 (2011). Thus, a state court's determination that a claim lacks merit bars federal habeas relief so long as "fairminded jurists could disagree" on the state court's decision. Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004). Moreover, to grant a habeas petition under § 2254(d)(2), a state court's factual findings must be "clearly erroneous," not just merely debatable. Torres v. Prunty, 223 F.3d 1103, 1107–08 (9th Cir.2000). These stringent standards "guard against extreme malfunctions in the state criminal justice systems, not as a substitute for ordinary error correction through appeal."

1       Richter, 131 S.Ct. at 786 (internal quotation marks omitted).

2  Griffith v. Harrington, 727 F.3d 940, 945 (9th Cir. 2013).

3       For his ineffective assistance claim, petitioner asserts among a laundry list of pure conclusions that his counsel was ineffective because he failed "to investigate the victim" because if he had, the attorney would have found out that the victim, Genaro Maravilla, was prepared to testify that petitioner did not enter his apartment. Petitioner does not address the actual testimony of Maravilla. As shown above, Maravilla was a reluctant witness who initially testified that a hand with a knife broke his window and stabbed him in the hand. However, even if this were the sum total of the facts, a stabbing hand entering the apartment is an entry. See People v. Valencia, 28 Cal.4th 1, 8, 120 Cal.Rptr.2d 131 (2002), disapproved on other grounds, People v. Yarbrough, 54 Cal.4th 889 (2012) ("'the California courts have found that a burglary is complete upon the slightest partial entry of any kind, with the requisite intent'"). Maravilla initially testified that he did not see the assailant. Unfortunately for petitioner, Maravilla had spoken to the deputy who arrived on the scene on the stabbing day; he told the deputy that it was indeed petitioner who was beating on his door threatening Maravilla's life. Thus, Maravilla, who was a drug dealer and on parole abscond status and who was initially prepared not to identify petitioner, got caught in his half-truths. The jury was free to believe Maravilla on the stabbing day (and the other witnesses) as opposed to an initially disingenuous Maravilla on testimony day. The outcome had nothing to do with defense counsel's alleged failure to investigate. In addition, all involved knew that Maravilla was a drug dealer on abscond status—there was nothing else to investigate.

       The undersigned need not discuss petitioner's other allegations, e.g., "trial counsel failed to research the facts of the case," "trial counsel failed to subpoena witnesses (Tesla Carroll—apparently the wife of petitioner) which was crucial and/or critical to the case." No declaration, or even discussion, about the specifics of this supposed witness testimony is included in the petition. Petitioner simply asserts that Tesla Carroll "would have testified to petitioner['s] actual

/////

/////

innocence." (Petition, Dkt. 1 at electronic page 31.) All the allegations of ineffective assistance are simply bereft-of-facts conclusions.[4] Neither the Superior Court, not this court, recognizes such conclusions as actionable. McQueary v. Blodgett, 924 F.2d 829, 834-35 (9th Cir.1991).

### C. Ineffective Assistance of Counsel (Conflict of Interest)

Petitioner contends that the Office of Public Defender, but not his counsel from that office, at one time in the past represented the victim/witness as well as petitioner's wife, the witness who was not called. The petitioner does not relate why this asserted conflict, if true, adversely affected his lawyer's work. Nor does petitioner attempt to show that had counsel not been adversely impacted by the conflict, the outcome of his trial may well have been different. Petitioner simply terms all of these problems as an actual conflict of interest. Petitioner also complains that his counsel later was employed by the District Attorney's office, and that counsel must have not done his best in order to curry favor with that office.

> The Supreme Court has held that a criminal defendant has a constitutional right to assistance of conflict-free counsel. Strickland v. Washington, 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Where the conflict stems from counsel's representation of multiple defendants, the petitioner "must establish that an actual conflict of interest adversely affected his lawyer's performance." Cuyler v. Sullivan, 446 U.S. 335, 350, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). The Supreme Court has defined an "actual conflict" by the effect a potential conflict had on counsel's performance. Mickens v. Taylor, 535 U.S. 162, 171, 122 S.Ct. 1237, 152 L.Ed.2d 291 (2002).
>
> Where defense counsel timely points out a conflict of interest in joint representation, the trial court is required to investigate further; ignoring counsel's objection mandates automatic reversal of the resulting conviction. See Holloway v. Arkansas, 435 U.S. 475, 488, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978). Conflicts can also arise from successive representation, particularly when a substantial relationship exists between the cases, such that the "factual contexts of the two representations are similar or related." Trone v. Smith, 621 F.2d 994, 998 (9th Cir.1980); see also Fitzpatrick v. McCormick, 869 F.2d 1247, 1252 (9th Cir.1989). The Supreme Court, however, has left open the question whether conflicts in successive representation that affect an attorney's performance require a showing of prejudice for reversal. See Mickens, 535 U.S. at 176, 122 S.Ct. 1237.

---

[4] Petitioner has added some specificity, but no support, in his request for evidentiary hearing. The section dealing with this request will discuss the further allegations.

11

Houston v. Schomig, 533 F.3d 1076, 1081 (9th Cir. 2008).

> Houston's lawyer, Craig Jorgenson, never personally represented the witness, Chadwick, against his client Houston. Thus, in this context, the Sixth Amendment's right to conflict-free counsel was violated only if Jorgenson's office's prior representation of Chadwick "adversely affect[ed] [his] performance."

Alberni v. McDaniel, 458 F.3d 860, 870 (9th Cir.2006). This is so because "'an actual conflict of interest means precisely a conflict that affected counsel's performance—as opposed to a mere theoretical division of loyalties.'" Id. (quoting Mickens v. Taylor, 535 U.S. 162, 171, 122 S. Ct. 1237, 152 L.Ed.2d 291 (2002) (emphasis and alterations omitted)).

Houston v. Schomig (appeal after remand), 637 F.3d 976, 978 (9th Cir. 2011) (finding no actual conflict). See also Lor v. Felker, 2013 WL 2156549 (E.D. Cal. May 17, 2013).

Assuming the truth of petitioner's factual allegations, i.e., that the public defender's office did indeed represent the victim and petitioner's wife in previous criminal proceedings, and ignoring the fact that no potential conflict was apparently addressed to the judge, petitioner travels no factual distance in demonstrating that these prior representations adversely impacted his attorney's representation. Petitioner must demonstrate in a credible way that his counsel pulled punches in representing his client when cross-examining the victim/witness because of this previous representation, or did not call petitioner's wife because of this same problem. His attack on his attorney's trial tactics with respect to cross-examining the witness ignores the record. Again, as shown above, the victim turned into a reluctant witness for the prosecution—so reluctant that the prosecutor was permitted to ask leading questions on direct examination; so reluctant that the witness initially refused to identify petitioner as his attacker. Petitioner does not answer the question why his counsel would want to attack this reluctant witness. Indeed, there is no logical answer to petitioner's assertion. Moreover, he simply does not submit any credible statements from his wife as to her potential, favorable testimony. (She was initially listed as a prosecution witness.)

Petitioner's exclaimed point that his attorney rested after a very short defense ignores the overwhelming evidence presented by the prosecution. The victim ultimately identified petitioner as his attacker after much prodding by the district attorney, and Ms. Cross repeated petitioner's

damning admissions, made before and after the crime, that he was going (had gone) to petitioner's apartment to stab and kill him. There simply was not much his counsel could do except drag out a hopeless case. If the case was not hopeless, petitioner has not to this day related a single fact as to what might have given it hope.

Finally, petitioner has supplied no details about his counsel's asserted entry into the district attorney's office, nor, as stated above, has petitioner shown any adverse effect from this purported conflict.

Accordingly, petitioner has not demonstrated an actual conflict.

### D. Evidentiary Hearing

In his later filed request for an evidentiary hearing, petitioner adds a few factual assertions, not all of them, or any of them, good for his case. He now states that his trial counsel *did* hire an investigator, who *did* attempt to interview petitioner's wife and the victim.

> "[B]oth said they had nothing to say. Ms. Carroll was living in the apartment of said victim, Genaro Maravilla. Ms. Carroll was in the apartment and witnessed the whole incident. Petitioner's counsel subpoenaed petitioners wife and eye witness Tesla Carroll, See Exhibit "A" and A1 [which show that the *prosecution* had listed Ms. Carroll as a witness], who could and would of testified petitioner in fact did not jump into the apartments broken window. Ms. Carroll would have testified that petitioner was in fact innocent of all charges.
>
> ***
>
> Genaro Maravilla, said victim, testified no less than three times under oath that petitioner never jumped through the broken window into his apartment….Mr. Maravilla repeatedly testified petitioner never entered his apartment. Petitioners counsel Public Defender William Bateman never cross-examined victim witness about his [favorable] testimony which proves petitioners actual innocent [sic].

Request for Evidentiary hearing, Dkt. 27 electronic pages 2-3.[5]

Petitioner adds no new facts about the Office of the Public Defender's representation of the two persons, Tesla Carroll and the victim, Maravilla.

---

[5] As previously discussed, California law did not require petitioner to "jump through the window" in order to be guilty of burglary. His stabbing hand going through the window, or the window pieces, was all that was necessary.

13

1    The reason to deny the request for evidentiary hearing stems from the case of
2  Cullen v. Pinholster, __U.S.__, 131 S. Ct. 1388 (2011).  Only the record before the state
3  court may be initially considered.  Pizzuto v. Blades, 729 F.3d 1211, 1216 (9th Cir. 2013).
4  If this record demonstrates a constitutional error in the AEDPA sense, discovery and an
5  evidentiary hearing take place to finally determine the merits of a constitutional claim.  Id.
6  See also Lewis v. Ayers, 2011 WL 2260784 (E.D. Cal. Jun. 7, 2011).   Moreover, if the
7  state court was AEDPA unreasonable in not holding an evidentiary hearing (or allowing
8  discovery) based on the record before it, the federal court may allow discovery and/or an
9  evidentiary hearing.  Gulbrandson v. Ryan, __F.3d__, 2013 WL 5779188 *7 (9th Cir.
10 2013).  In the absence of these two very limited exceptions, a petitioner may not be
11 granted an evidentiary hearing in federal court.
12    The baseless allegations submitted in this federal case were the ones also presented
13 to the state court.  While some of the exhibits attached to the Petition here and the Request
14 for Evidentiary Hearing were presented to the state courts, petitioner in essence seeks a
15 slight expansion of the record here.  All of this does not matter.  Assuming that the very
16 same exhibits here were before the state courts, petitioner still did not submit any credible
17 potential testimony from his apparently estranged wife.  Her asserted testimony as stated
18 by petitioner that she did not see petitioner jump through the window is legally irrelevant
19 in any event.  Again, there could be no tactical advantage for defense counsel to have
20 made a lengthy and vigorous cross-examination of the victim/witness because defense
21 counsel could at least argue that Maravilla's initial testimony was the one to be believed.
22 The limited cross-examination attempted to get Maravilla to confirm his initial testimony.
23 (RT 220-221.)  The danger of pushing Marvilla too much on cross-examination became
24 apparent at RT 225, 233, 234 when he re-adopted, more or less, what he had said to the
25 detective on the scene.  Maravilla reiterated that petitioner had stabbed his hand when the
26 hand and knife came through the window.   The remainder of cross-examination dealt
27 with Maravilla's mental and drug problems as well as his abscond status.  Counsel made a
28 futile attempt to get Maravilla to testify that he had come to the door with a knife and

confronted petitioner with it.

In short, the state court committed no AEDPA error in denying any claim of ineffective assistance of counsel, witness or conflict. It also was well within reason not to order discovery or an evidentiary hearing based on the allegations before it. No evidence was submitted which suggested that Tesla Carroll should have been called as a witness or that counsel's efforts were hampered in any way due to the Public Defender's office having previously represented tesla Carroll or Maravilla. An evidentiary hearing would have been a waste of time. Certainly, no evidence was submitted which would undermine the confidence of any court in the outcome of the verdict. The request for an evidentiary hearing is denied. The undersigned would adopt these conclusions even if reviewing the request for evidentiary hearing under the "old rules" in the absence of Cullen. [6]

### E. Double Jeopardy and Ex Post Facto Claim

Petitioner claims that the two prior, serious felonies which enabled the court to sentence him as a "three strikes" defendant, i.e., eligible for an indeterminate life sentence, were incurred long before his underlying crime herein, and even before the Three Strikes law in California was enacted.[7] Hence, he claims, that the use of such priors violated the Double Jeopardy and Ex Post Facto protections in the Constitution.

Respondent reads the petition in a more expansive way given some of the argument set forth in the petition. Interpreting the petition as also challenging the concurrent use of two recidivist state enhancement statutes in sentencing petitioner for his current crimes, respondent argues that the use of dual recidivist enhancements to enhance the punishment for the underlying crime or crimes does not violate double jeopardy.

---

[6] "[W]here a petitioner raises a colorable claim of ineffective assistance, and where there has not been a state or federal hearing on this claim, we must remand to the district court for an evidentiary hearing." Stankewitz v. Woodford, 365 F.3d 706, 708 (9th Cir.2004) ( quoting Smith v. McCormick, 914 F.2d 1153, 1170 (9th Cir.1990)); Gonzalez v. Knowles, 515 F.3d 1006, 1018 (Hawkins, J. dissent) (9th Cir. 2008). Petitioner's problem here is that his allegations do not rise to the level of colorable allegations, i.e., if believed true would require a grant of the petition).

[7] Petitioner incurred a federal bank robbery conviction as well as a state robbery conviction in the late 1970s.

1    The first attack on the claim is that of procedural default, or bar, due to the fact
2    that the sentencing claims should have been brought on direct appellate review.  Although
3    the Superior Court cited an older case for this proposition, the more modern cases of <u>Ex
4    Parte Dixon</u>, 41 Cal. 2d 756 (1953) and <u>In re Harris</u>, 5 Cal. 4th 813 (1993) stand for the
5    same proposition.  However, the Ninth Circuit has frowned upon the use of this bar in
6    review of state habeas decisions, finding that the bar is not independent and adequate.  <u>See</u>
7    <u>Cross v. Sisto</u>, 676 F.3d 1172, 1179 (9th Cir. 2012), citing <u>LaCrosse v. Kernan</u>, 244 F.3d
8    702, 704-05 (9th Cir. 2001), in turn citing <u>Park v. California</u>, 202 F.3d 1146, 1151-52 (9th
9    Cir. 2000).  Rather than embark upon a lengthy voyage to see if things have changed
10   regarding the adequacy and independence of the bar, it is best to simply avoid the
11   default/bar and go to the merits, as federal law entitles the undersigned to do.  <u>Lambrix v.</u>
12   <u>Singletary</u>, 520 U.S. 518, 524-25, 117 S. Ct. 1517 (1997).
13       It is more than well established that such claims as petitioner raises are not
14   cognizable in habeas corpus review.  <u>See</u> <u>United States v. Kaluna</u>, 192 F.3d 1188, 1198-99
15   (9th Cir. 1999) (en banc) (finding that the federal Three Strikes provision, 18 U.S.C.
16   3559(c)(1) does not violate double jeopardy principles by utilization of an "old crime" to
17   enhance the sentence of a present conviction).  <u>See also</u> <u>id</u> at 1199, finding that *ex post*
18   *facto* principles are not violated as long as the recidivist enhancement statute was in force
19   at the time the present time was committed.  This case has direct applicability to
20   petitioner's contentions about the use of California's Three Strikes Statute, or any
21   recidivist enhancement at issue herein.  Clearly, there is no Supreme Court precedent
22   which rejects the <u>Kaluna</u> holdings, nor is there such precedent which has found
23   California's similar sentencing scheme to be violative of double jeopardy or *ex post facto*
24   constitutional protections.  Under AEDPA principles, the claim must be denied.
25       To the extent that petitioner does claim that use of dual recidivist enhancement
26   (use of priors in the three strikes context [Cal. Penal Code 667(e)] as well as the five year
27   recidivist enhancement [Cal. Penal Code 667(a)]) is "double punishment," the short
28   answer is that penalty enhancements are not encompassed by Double Jeopardy

1  protections, at least where it is clear that the legislature intended the dual use.

> The guarantee against double jeopardy includes three distinct constitutional protections. "It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishment for the same offense." North Carolina v. Pearce, 395 U.S. 711, 717, 89 S. Ct. 2072, 23 L.Ed.2d 656 (1969); Brown v. Ohio, 432 U.S. 161, 165, 97 S. Ct. 2221, 53 L.Ed.2d 187 (1977). Here, Plascencia contends that by imposing an additional twenty-five years for her use of a firearm, the trial court violated the third of these guarantees. We disagree.
>
> In Missouri v. Hunter, 459 U.S. 359, 366, 103 S. Ct. 673, 74 L.Ed.2d 535 (1983), the Supreme Court made clear that the protection against multiple punishments for the same offense did not necessarily preclude cumulative punishments in a single prosecution. The key to determining whether multiple charges and punishments violate double jeopardy is legislative intent. Id. at 368–69, 103 S.Ct. 673. When the legislature intends to impose multiple punishments, double jeopardy is not invoked. Id.

Plascencia v. Alameida, 467 F.3d 1190, 1204 (9th Cir. 2006).

See also Cox v. Biter, 2013 WL 3288166 *10 (C.D. Cal. Jun. 28, 2013); Horsley v. Haviland, 2012 WL 2856851 (E.D. Cal. Jul. 11, 2012) ("In addition, double jeopardy protections do not apply to the imposition of sentence enhancements because sentence enhancements do not 'punish' a defendant within the meaning of double jeopardy"); United States v. Watts, 519 U.S. 148, 154, 117 S. Ct. 633, 136 L.Ed.2d 554 (1997).

As argued by respondent, the California legislature has specifically authorized the use of the dual recidivist enhancement. People v. Acosta, 29 Cal. 4th 105, 131 (2002); People v. Carthwright, 39 Cal. App. 4th 1123, 1138-39 (1995) (both cases expressly finding the legislature's intent).

*Conclusion*

Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Cases, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate of appealability may issue only "if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). For the reasons set forth in these findings and recommendations, a substantial showing of the denial of a constitutional right has not been made in this case.

Accordingly: IT IS HEREBY ORDERED: petitioner's request for an evidentiary hearing, filed August 19, 2013 (ECF No. 27), is denied.

IT IS HEREBY RECOMMENDED that:

1. The petition be denied in its entirety; and

2. The District Court decline to issue a certificate of appealability.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: 11/27/2013

/s/ Gregory G. Hollows
GREGORY G. HOLLOWS
UNITED STATES MAGISTRATE JUDGE